LIPPMANN *v.* JOHNSON.

(No. L-80-155 — Decided June 24, 1980.)

*Mr. George R. Smith, Jr.,* for petitioner.

*Messrs. Shumaker, Loop & Kendrick* and *Mr. Thomas G. Pletz,* for respondent.

*Messrs. Britz & Zemmelman* and *Mr. Harland M. Britz,* for intervenor.

WILEY, J.   This cause came to be heard on an amended petition for habeas corpus, the answers of the respondent and the intervenor, the stipulations of fact entered into by counsel and oral arguments.

Petitioner, David Lippmann, is a patient in St. Vincent Hospital's psychiatric ward. He was admitted to St. Vincent Hospital as a voluntary patient by application of his mother and guardian of his person, Mrs. Lois Lippmann, who is the intervenor here. Mrs. Lippmann was appointed guardian of the person of the petitioner after the petitioner was found incompetent by reason of mental illness on April 7, 1980. Petitioner, pursuant to R. C. 5122.03, requested his release from the hospital on April 25, 1980. The hospital took, and continues to take, no action on this request. Petitioner then sought this writ of habeas corpus against the respondent, Alan Johnson, president of St. Vincent Hospital.

Our decision necessitates consideration and construction of R. C. 5122.02, 5122.03 and 5122.30, in reference to the ability of an adult incompetent to request his release from a men-

tal hospital after his voluntary admission into the hospital by his guardian. R. C. 5122.30 grants any individual detained pursuant to R. C. Chapter 5122 the right to petition for a writ of habeas corpus. Pursuant to R. C. 5122.30, the petitioner seeks a writ of habeas corpus from this court.

The other two statutory sections at issue here, R. C. 5122.02 and 5122.03, concern the admission of voluntary patients and the right to release of voluntary patients.

R. C. 5122.02 provided (see 137 Ohio Laws 3287-3288) in pertinent part:

"(A) Any person, eighteen years of age or over who is, appears to be, or believes himself to be mentally ill may make written application for voluntary admission to the head of a hospital.

"(B) Such application may also be made on behalf of a minor by a parent, guardian of the person, or the one having custody of the minor, and on behalf of an adult incompetent person by the guardian or the one having custody of the incompetent person.

"Any person whose admission is applied for under division (A) or (B) of this section may be admitted for observation, diagnosis, care, or treatment, in any hospital unless the head of the hospital finds that hospitalization is inappropriate.

"(C) If a minor or person adjudicated incompetent due to mental illness whose voluntary admission is applied for under division (B) of this section is admitted, the court shall determine, upon petition by the legal rights service, private or otherwise appointed counsel, a relative, or one acting as next friend whether the admission or continued hospitalization is in the best interest of the minor or incompetent.

"The head of the hospital shall discharge any voluntary patient who has recovered or whose hospitalization he determines to be no longer advisable and may discharge any voluntary patient who refuses to accept treatment consistent with the written treatment plan required by section 5122.27 of the Revised Code."

Under this section an adult incompetent who is voluntarily admitted to the hospital by his guardian has a right to an independent review of the necessity of his hospitalization.

R. C. 5122.03 involves the right of voluntary patients to request their release and provides in part:

"A patient admitted under section 5122.02 of the Revised Code who requests his release in writing, or whose release is requested in writing by his counsel, legal guardian, parent, spouse, or adult next of kin shall be released forthwith, except that when:

"(A) The patient was admitted on his own application and the request for release is made by a person other than the patient, release may be conditional upon the agreement of the patient; or

"(B) The head of the hospital, within three court days from the receipt of the request for release, files or causes to be filed with the court of the county where the patient is hospitalized or of the county where the patient is a resident, an affidavit under section 5122.11 of the Revised Code. Release may be postponed until the hearing held under section 5122.141 or 5122.15 of the Revised Code. A telephone communication within three court days from the receipt of the request for release from the head of the hospital to the court, indicating that the required affidavit has been mailed, is sufficient compliance with the time limit for filing such affidavit.

"Unless the patient is released within three days from the receipt of the request by the head of the hospital, the request shall serve as a request for a probable cause hearing under section 5122.141 of the Revised Code. If the court finds probable cause to believe that the patient is a mentally ill person subject to hospitalization by court order, all provisions of this chapter with respect to involuntary hospitalization apply to such person."

Petitioner has utilized R. C. 5122.03 in requesting his release. At issue here is whether an adult incompetent is limited to R. C. 5122.02 in obtaining an independent review of his voluntary admission by his guardian to a mental hospital or whether he is able to request his release under R. C. 5122.03. An additional issue is whether an adult incompetent can make this request for release, himself, or whether, because of the adjudication of incompetency, he must have this request made by another person, such as his guardian, his parent, his spouse or his attorney. Upon our examination of the statutory language and of existing case law in this area, we determine that a person who is adjudicated incompetent and who is voluntarily admitted by his guardian to a mental hospital does not lose, by

the adjudication of incompetency, his right to request his release from the mental hospital pursuant to R. C. 5122.03.

R. C. 5122.03, in its first paragraph, does not limit the right of a voluntary patient to request his release to those patients voluntarily admitted under R. C. 5122.02(A). Instead, R. C. 5122.03 permits all patients admitted under R. C. 5122.02 to request their release from a mental hospital. Therefore, we determine that the legislature, by failing to limit this right to request release to those patients admitted under R. C. 5122.02(A), intended to provide this right to request release to those patients admitted under R. C. 5122.02(B), as well.

This result is consistent with the United States Supreme Court's opinion in *O'Connor* v. *Donaldson* (1975), 422 U. S. 563, 576, which held that "***a State cannot constitutionally confine***a nondangerous individual who is capable of surviving***" in the community on his own, or with the assistance of family or friends. Permitting a guardian to voluntarily admit his ward and, yet, denying the ward the right to request his release under R. C. 5122.03 could lead to the result in *Donaldson* because there will have been no independent determination of the ward's dangerousness.

The Arkansas Supreme Court in the case of *Von Luce* v. *Rankin* (1979), 267 Ark. 34, 588 S.W. 2d 445 applied *O'Connor* v. *Donaldson, supra,* to a situation where a ward was voluntarily admitted to a state hospital by her guardian and the ward then requested her release. The court stated:

"Mental illness alone is not justification for a guardian or a state to lock a person up. There must be a meaningful hearing in accordance with due process before such action is authorized. *Wessel* v. *Pryor,* 461 F. Supp. 1144 (***[E.D.] Ark. 1978); *O'Connor* v. *Donaldson,* 422 U. S. 563 (1975). It was stated on the face of the application for voluntary admission that a patient could not be held against his wishes unless the patient was considered homicidal, suicidal, or gravely disabled. In this case there has simply been no attempt on the part of anyone to comply with the provisions of any Arkansas law as it relates to involuntary commitment. Not even a mentally ill person may be confined against his will unless he is afforded due process of law.***" *Von Luce* v. *Rankin, supra* (267 Ark.), at 38-39.

A further factor in our decision that petitioner may re-

quest his release under R. C. 5122.03 is the essential difference between guardianship proceedings provided in R. C. Chapter 2111 and civil commitment proceedings provided for in R. C. Chapter 5122. An adjudication of incompetency is not a determination that an individual is mentally ill subject to hospitalization. R. C. Chapter 5122 provides specific definitions of the type of behavior that an individual must exhibit[1] and the procedural protections which must be followed[2] before an individual can be involuntarily hospitalized. R. C. Chapter 2111 contains no such specific definitions or protections. Therefore, even though the petitioner has been found incompetent, there has not yet been a judicial determination of his need for hospitalization.

Because we have determined that the petitioner may request his release pursuant to R. C. 5122.03, we find petitioner's petition for habeas corpus is well taken. Under R. C. 5122.03, subject to the provisions of R. C. 5122.141, the head of the hospital must, upon receiving a written request for release, either release the patient, or, within three court days, file an affidavit under R. C. 5122.11 to trigger a judicial determination of whether the patient is a mentally ill person subject to hospitalization. The record indicates no such affidavit was filed within three court days of the petitioner's request for

---

[1] The types of behavior are detailed in R. C. 5122.01(B) (see 137 Ohio Laws 3284-3285) as follows:

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

"(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior or evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

[2] These procedural protections are provided throughout R. C. Chapter 5122, but specific sections providing such protections include R. C. 5122.12, 5122.13, 5122.14, 5122.141 and 5122.15.

release. Therefore, under R. C. 5122.03, petitioner is entitled to his discharge.

*Judgment accordingly.*

POTTER, P. J., concurs.

CONNORS, J., dissents.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

CONNORS, J., dissenting. The petitioner, David Lippmann, maintains in his petition that he is being wrongfully restrained of his liberty at St. Vincent Hospital's psychiatric ward and that the respondent, Alan Johnson, is the president of the hospital. Petitioner's admission to the hospital was pursuant to a voluntary admission application form, signed and filed by petitioner's guardian and mother, Mrs. Lois Lippmann. Subsequent to the voluntary admission, petitioner submitted a written request for his release to respondent pursuant to R. C. 5122.03. Petitioner asserts that respondent was required to release petitioner forthwith or file an affidavit pursuant to R. C. 5122.11. In the alternative, petitioner asserts that, pursuant to R. C. 5122.03 and 5122.141, he is entitled to a probable cause hearing within three court days from the date on which the request is made, and, if the hearing is not conducted, petitioner alleges he is entitled to an immediate discharge.

Petitioner also alleges that he was wrongfully denied the right to representation of counsel in that his counsel was refused access to petitioner's medical records. Petitioner also alleges that respondent failed to notify petitioner of his rights under the law within 24 hours after his admission in violation of R. C. 5122.27(G) and 5122.29(A). In his amended petition, petitioner maintains that the denial of his rights to freely communicate with, and be visited at reasonable times by, his counsel is a violation of R. C. 5122.29(C) and his constitutional rights to due process of law. The petitioner prayed for a writ of habeas corpus directing the president of St. Vincent Hospital to release him or, in the alternative, to bring the petitioner before this court to determine the legality of his detention.

The answer of the respondent is generally in the nature of a general denial with a second defense averring that the peti-

tioner has full and adequate remedies at law which he has failed to exhaust prior to pursuing this remedy for an extraordinary writ. The intervenor has also answered with a general denial and with a further allegation that on April 7, 1980, intervenor was appointed guardian of the person of David Lippmann, who is an incompetent by reason of mental illness; that, pursuant to legal authority, she admitted David Lippmann to St. Vincent Hospital's psychiatric ward; and, that petitioner's restraint of liberty is legal.

The stipulations established that, by proceedings before the Probate Court of Lucas County, Mrs. Lippmann was appointed guardian of the person of petitioner for the reason that he is an incompetent by reason of mental illness; that Mrs. Lippmann signed an application for voluntary admission of the petitioner to St. Vincent Hospital's psychiatric ward, and, that thereafter, petitioner submitted a written request for release pursuant to R. C. 5122.03; that no action was taken by respondent on petitioner's request for release; that petitioner's counsel obtained admission to St. Vincent Hospital's psychiatric ward and met with petitioner and obtained his signature on a retainer agreement and on an authorization for release of information; and, that respondent has failed to release information as requested by petitioner's counsel. Other stipulations were made which are not pertinent to the disposition of this action. My reasoning turns on the application of R. C. 5122.02.

Upon consideration of the foregoing, I would deny the writ on the grounds that petitioner has other and adequate remedies available. See 26 Ohio Jurisprudence 2d, Habeas Corpus, Section 45, and cases therein cited.